# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

ZURICH AMERICAN INSURANCE )
COMPANY, ET AL., )
                                   )
           Plaintiffs, )
                                   )
vs. )
                                   ) No. 20-00763-CV-W-FJG
                                   )
TEDROS LAKEW, ET AL., )
                                   )
           Defendants. )

# ORDER

Currently pending before the Court is American Millennium Insurance Company's ("American Millennium's") First and Second Motions for Summary Judgment (Docs. # 385, 399); Merob's Motion for Summary Judgment on Counts II and III (Doc. # 402); Amazon's Motion for Partial Summary Judgment on Count III (Doc. # 388); and the parties' Joint Motion to Allow Expert Depositions (Doc. # 433).

## I. BACKGROUND

On December 6, 2019, Tedros Lakew ("Lakew") was driving a tractor-trailer along Interstate 35 in Chase County, Kansas. During the late evening hours of December 6, 2019, Lakew was involved in a collision with a vehicle driven by Leslie S. Henson. On December 13, 2019, Henson died as a result of injuries suffered in the accident. The driver, Lakew was employed by Merob Logistics, LLC. ("Merob"). Merob owned the tractor portion of the vehicle. The trailer was owned by Amazon Logistics, Inc. ("Amazon"). Lakew was hauling the Amazon trailer pursuant to a transportation

agreement between Amazon and Merob known as the Amazon Relay Carrier Terms of Service and Amazon Relay Program Policies ("Relay Carrier Terms"). The Relay Carrier Terms require Merob to maintain business auto liability coverage that extends coverage to Amazon as an additional insured. On December 6, 2019, Merob was insured under a business auto policy issued by American Millennium ("Millennium"). Lakew was also an insured under the Millennium policy. The Millennium policy provides liability coverage with a limit of $1,000,000 per accident.

Amazon.com is also a named insured under a policy issued by Zurich American Insurance Company ("Zurich"). This policy provides commercial general liability insurance with a limit of liability of $10,000,000. Amazon is required to pay a deductible for any payment Zurich makes under the policy in response to any claim asserted against any insured under the policy.

The Zurich policy includes the following language:

> We have the right and duty to defend any "insured" against a "suit" asking for such damages…. We may investigate and settle any claim or "suit" as we consider appropriate….

(Exhibit H, Zurich Policy No. BAP 4678512-06, Insuring Agreement). The following conditions apply to the policy in addition to the Common Policy Conditions:

### SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:
**A. Loss Conditions**
…
**2. Duties In The Event Of Accident, Claim, Suit Or Loss**
We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss".

2

Include:

    **(1)** How, when and where the "accident" or "loss" occurred;

    **(2)** The "insured's" name and address; and

    **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

    **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

    **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

    **(4)** Authorize us to obtain medical records or other pertinent information.

\*\*\*

On December 18, 2019, Merob received a letter from JJ Burns of the Dollar, Burns & Becker law firm. The letter stated that Mr. Burns represented the Henson defendants

with regard to the personal injuries and wrongful death of [the Decedent], who died as a result of the injuries sustained in the [December 6, 2019] crash. This letter is intended to put you on notice of the existence of very serious claims against your driver and your company, and to alert you so that your do not allow evidence to be destroyed.

The letter demanded that Merob preserve evidence including:

[t]he tractor and trailer involved in this collision, and all parts thereof, as well as any other physical evidence of the crash. We require that you maintain these items in their post collision condition until our experts are allowed to inspect them.

Counsel for Lakew and Merob received the letter the same day but did not forward the letter to Amazon at any time. An evidence preservation letter was never sent on behalf of American Millennium or Merob to Amazon concerning the trailer. The Henson defendants' counsel also did not send an evidence preservation letter to Amazon. In late December 2019, having received neither a claim nor an evidence preservation

letter, Amazon had the trailer removed from the towing location for salvage. Neither American Millennium nor any other defendant ever inspected the trailer or contacted Amazon to inspect the trailer after it was removed from the tow lot.

On January 28, 2020, counsel for the Henson defendants sent a demand letter to counsel for Merob/Lakew setting forth the terms of an offer to enter into a Non-Execution agreement. Counsel for the Hensons stated his belief that additional insurance may exist for Merob/Lakew for the accident. In a February 28, 2020 email, American Millennium, Lakew and Merob accepted the demand conveyed in the January 28, 2020 letter and agreed to tender the $1 million policy limits to the Hensons. In the February 28, 2020 email, Lakew and Merob's counsel expressly noted:

> Merob has an indemnity provision in its agreement with Amazon which indicates that Merob will indemnify Amazon for general third party litigation. Amazon also has language indicating that it must be advised of settlement.

No notice of the January 28, 2020 demand was given to Amazon at that time. On March 6, 2020 Lakew and Merob's counsel reiterated to the Henson defendants' counsel that "[h]ow to notify [A]mazon of this is one thing we need to figure out because the [Relay Carrier Terms] require[ ] notification of settlement." Leslie M. Henson, Lakew and Merob entered into a Non-Execution Agreement which was signed by the Hensons on March 23, 2020, signed by Merob on April 1, 2020 and signed by Lakew on April 28, 2020. Under the Non-Execution Agreement, Merob and Lakew submitted to the jurisdiction of the Jackson County court, agreed to venue and filed an Answer which did not raise the defenses of personal jurisdiction or venue. Under the agreement, American Millennium agreed to pay out its $1 million policy limits to the Hensons, who in turn agreed not to levy execution against the personal asserts of the Lakew or Merob in

4

connection with any judgment or award against them in the wrongful death action. The Non-Execution Agreement did not include any similar protection for Amazon, who was an additional insured under the policy. The Non-Execution Agreement stated that the Henson defendants "believe[ ] that Merob and Lakew may be insureds under other insurance policies." American Millennium did not notify Amazon of the Non Execution Agreement before it was executed.

On April 13, 2020, the Hensons filed a wrongful death action against Lakew and Merob in Jackson County Circuit Court. Amazon was not named as a defendant in the wrongful death lawsuit and the Hensons did not file a claim against Amazon for contributing to cause the accident.

On May 12, 2020, Rick Holtzclaw sent a letter to Amazon notifying them of the accident, the wrongful death lawsuit and that American Millennium had agreed to pay the limits of its policy. The letter enclosed a copy of petition and advised that an answer would be filed and a hearing to approve American Millennium's payment would be scheduled soon. The letter was received by Amazon on May 20, 2020. The day before, on May 19, 2020, the Hensons, Merob and Lakew filed a joint motion to approve the wrongful death settlement and distribution. The motion was approved by the Jackson County Circuit Court on May 28, 2020. Amazon's risk manager Kelly Nguyen received the May 12 letter and determined that Merob was providing a status update and there was nothing for Amazon to handle at the time.

On June 23, 2020, Rick Holtsclaw, counsel for Merob and Lakew, mailed correspondence to Zurich's corporate headquarters in Schaumburg, Illinois, via regular mail. The letter was received by Zurich on June 30, 2020, and stated in pertinent part:

RE: Henson v. Merob Logistics LLC, et al.
Date of Accident: December 6, 2019
Accident Location: I-35 S, Chase County, Kansas

To Whom It May Concern:

Please be advised that I represent Merob Logistics LLC and Tedros Lakew in regard to an accident that occurred on December 6, 2019, in Chase County, Kansas, which resulted in the death of Mr. Leslie S. Henson. The Kansas Motor Vehicle Crash Report is enclosed and references the parties and vehicles involved. Several photos of the crash scene and vehicles involved in the crash are also enclosed.

At the time of the crash, Merob Logistics LLC was insured by American Millennium Insurance Company, and American Millennium has paid the limits of its policy ($1,000,000.00) pursuant to a non-execution agreement to the wrongful death beneficiaries of Mr. Henson.

The attorney for the wrongful death beneficiaries of Mr. Henson has directed me to tender the defense of Merob Logistics LLC and Tedros Lakew to A-One Commercial Insurance RRG, Inc., Zurich American Insurance Company, Castle Rock Capacity Insurance Agency, and Liberty International Underwriters Inc.

As soon as possible, and certainly within 14 days of your receipt of this letter, please let me know if A-One, Zurich, Castle Rock, or Liberty agree to defend and indemnity Merob Logistics, LLC and/or Tedros Lakew. If I do not hear from you, I will likely have to take the steps necessary to protect the interests of my clients.

Thank you for your time and consideration. Please let me know if you have any questions or concerns.

\*\*\*

(Exhibit 35 – June 23, 2020 Letter from Counsel). Merob, Lakew, the Henson

defendants, American Millenium nor Amazon ever sent Zurich a copy of the wrongful

death lawsuit filed in Jackson County Circuit Court.

In an email dated July 15, 2020, counsel for Merob/Lakew advised counsel for the

Hensons that after he did not hear from any of the insurance companies, his clients had

agreed to arbitrate the dispute. On July 25, 2020, counsel for Merob/Lakew sent to the

Hensons' counsel the Arbitration Agreement, signed by their clients. On August 28, 2020, Mr. Holtzclaw sent to Zurich's corporate headquarters a letter stating in part:

> RE: Henson v. Merob Logistics LLC, et al.
> Date of Accident: December 6, 2019
> Accident Location: I-35 S, Chase County, Kansas
>
> To Whom It May Concern:
> I did not receive a response to my earlier communication regarding Zurich's willingness to defend and indemnify my clients, Merob Logistics LLC or Tedros Lakew.
>
> Because I did not hear from Zurich on the matter, my clients agreed to arbitrate the claims at issue. The arbitration is scheduled for September 3, 2020.
>
> Please let me know if Zurich would like to participate, or is interested in any other information.

(Exh. 37).

The arbitration took place on September 3, 2020. Neither Merob nor Lakew attended the arbitration proceeding. The arbitration award of $11,071,647.82, was signed by the arbitrator on September 16, 2020. The Henson defendants filed an unopposed motion for confirmation of the arbitration award on September 18, 2020, in Jackson County Circuit Court. Zurich filed a Motion to Intervene in the state court action on September 23, 2020. The court confirmed the award as a judgment on September 24, 2020. On September 25, 2020, Zurich filed another motion to intervene. On October 28, 2020, Zurich appealed the Circuit Court's judgment confirming the arbitration award. The Missouri Court of Appeals dismissed the appeal and remanded the matter back to the Jackson County Circuit Court. On January 27, 2022, the Jackson County Court denied Zurich's Motion to Intervene. On February 4, 2022, Zurich filed a notice of appeal.

7

The Henson defendants filed a garnishment action in Cole County Circuit Court seeking payment of the $10 million Zurich policy limit to pay the judgment entered in the wrongful death action.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984).

### III. DISCUSSION

#### A. American Millennium's First Motion for Summary Judgment on Count IV (Bad Faith) and Count VI (Equitable Subrogation)

In Count IV of the Second Amended Complaint, Amazon alleges that as an additional insured under American Millennium's insurance policy, American Millennium owed it a duty of good faith and fair dealing and acted in bad faith towards Amazon by: 1) Concealing the claim, non-execution agreement, lawsuit and arbitration from Amazon; 2) Exhausting the policy limits without obtaining a release from Amazon, leaving Amazon exposed to judgment against its personal assets; 3) Placing its interests ahead of Amazon's by seeking to get out of paying for defense costs at the expense of Amazon's ability to contest liability and damages and 4) Causing Merob to breach its contractual agreements with Amazon. American Millennium argues that it is entitled to summary judgment on Counts IV and VI and Count I of its Counterclaim for the following reasons: 1) No duty was owed to Amazon under the policy; 2) the insurance policy does not cover Amazon's damages and 3) Amazon could not have expected any benefit under the policy in the absence of a third-party claim.

#### 1. Did American Millennium owe Amazon a fiduciary duty?

American Millennium argues that because no claim was asserted against Amazon, no duty to Amazon was triggered. American Millennium states that it would only have owed a duty to defend Amazon or to settle a liability claim if the Hensons had made a claim against Amazon for contributing to cause the accident. Amazon argues in opposition that American Millennium conflates fiduciary duty with the duties to defend and settle under the policy, stating that "under Missouri law, it is the broad nature of the relationship created by the third-party liability policy and the terms of the policy that

9

imposes a fiduciary duty, and not the existence of a specific claim or demand."
(Amazon's Suggestions in Opposition, p. 29). Amazon states that American Millenium
acted in bad faith in breach of its fiduciary duty when it: 1) tendered the policy without
seeking a release for Amazon; 2) concealed the claim, non-execution agreement,
wrongful death action, arbitration and judgment from Amazon; 3) disregarded Amazon's
interests and 4) caused Merob to breach its contractual obligations to Amazon.

Amazon argues that the case of Millers Mutual Insur. Assn. v. Shell Oil Co., 959 S.W.2d
864 (Mo.App. 1997) is instructive regarding the duty of good faith owed by an insurer as
a fiduciary in the context of claims brought against multiple insureds. The Court agrees
that this case is instructive, but not for the reasons asserted by Amazon. In that case,
the underlying plaintiffs sued both the gas station owner ("Dunn") and Shell. Shell was
named as an additional insured under the insurance policy. Both Dunn and Shell
tendered the defense to Millers Mutual. Millers agreed to defend both parties and paid
all defense costs for both parties. The underlying plaintiffs made demand on Millers to
settle the underlying suit only as to defendant Dunn for the policy limits. Millers notified
Shell of the demand and plaintiffs' refusal to settle with Shell. Subsequently, Millers
settled the suit as to Dunn for the policy limits. The settlement related only to Dunn and
not to Shell. Millers then terminated its defense of Shell in the underlying proceedings
and brought a declaratory judgment action seeking a declaration that its duty to defend
Shell as an additional insured ceased with its settlement on behalf of Dunn. The court
held that "[]the issue of whether an insurer may terminate its duty to defend one insured
on a policy when it paid a settlement exhausting policy limits on the sole behalf of
another insured is one of first impression in Missouri." Id. at 869. The Court noted,

"Millers, faced with a difficult choice, should not be obligated to defend an additional insured after paying its limits in a reasonable settlement for the named insured." Id. at 870. The Court observed that Millers settled the claim in good faith and attempted to obtain a full release for Shell. The Court stated:

> A policy may specifically provide for termination of a duty to defend upon payment of the policy limits, but public policy requires the insurer to act in good faith in the interest of all insureds under the policy. . . .Millers attempted to obtain a settlement on behalf of Shell and upon the plaintiffs' refusal, it made a reasonable settlement on behalf of the named insured for the policy limits. The unambiguous policy language allows Millers to terminate its duty to defend upon exhaustion.

Id. at 871-72. The notable distinction between Millers Mutual and the instant action is that Shell was a named defendant who had been sued by the underlying plaintiffs. In the instant action, the Hensons never brought a claim against Amazon and there are no legal proceedings currently pending against Amazon. Even in Millers Mutual, the Court found that the insurance company acted in good faith when it paid out its policy limits in favor of the named insured without having secured a release on behalf of Shell. Amazon would be asking the Court to go a step further and find that American Millennium was prohibited from paying out its policy limits on behalf of Merob/Lakew because there was a possibility of some future claim against Amazon. The law does not support this assertion.

In Smith v. Zurich American Insur. Co., No. 4:16-CV-00187-ERW, 2016 WL 6947491, *5 (E.D.Mo. Nov. 28, 2016), the Court stated:

> This Court has previously held [a]s a general principle, no fiduciary duty exists between an insurer and its insured under Missouri law. . . .However, an insurer-insured fiduciary relationship can arise in certain circumstances, especially if the insurer is entrusted to defend a claim on behalf of the insured. . . .Here, however, there are no third party claims against an insured. Plaintiff, an insured is pursing compensation from his

11

insurer. Therefore, this case remains governed by the general principle
[that] no such duty exists where the insured is making a first party claim
against the insurer.

Id. at *5 (internal citations and quotations omitted).

Similarly, in Cuggino v. Nationwide Ins. Co. of America, No. 4:15-CV-250-CEJ,
2016 WL 233240 (E.D.Mo. Jan. 20, 2016), the court stated:

Courts interpreting Missouri law have found a fiduciary duty between
an insured and her insurer only in rare circumstances. The general
principle that no such duty exists applies where, as here, the insured is
making a first party claim against the insurer. . . .[i]n the situation where a
third party is suing an insurer's policy holder, it is the insurance company's
control over the claim that creates a fiduciary relationship between insurer
and insured. When the insured is suing its own insurance company, the
opposite is true. . . .In first party claims by insureds against insurers . . .the
parties occupy a contractually adversary or creditor-debtor status as
opposed to standing in a fiduciary relationship.

Id. at *2 (internal citations and quotations omitted).

As American Millennium notes in its reply, "[t]here must be a link between the
loss suffered by the claimant and the insured's action. That link is missing here."
(American Millennium's Reply Suggestions, p. 47). American Millennium notes that the
Hensons never asserted any claims against Amazon or alleged that the Amazon trailer
played any part in the accident. Courts look to the relief sought by claimants to
determine if there is any coverage under a third-party liability polity. See State Farm Fire
& Cas. Co. v. Nat'l. Research Ctr. for Coll. & Univ. Admissions, 445 F.3d 1100, 1102
(8th Cir. 2006). Since no relief was sought by the Hensons against Amazon, the Court
finds that American Millennium did not owe a fiduciary duty to Amazon.

**2. Was there an Implied Duty of Good Faith and Fair Dealing?**

Amazon states that Missouri law implies a covenant of good faith and fair dealing
in every contract and claims for breach of this covenant are contract actions, separate

and distinct from the independent tort action of bad faith, which arises from the existence of a fiduciary duty between parties. See e.g. Rock Port Mkt. Inc. v. Affiliated Foods Midwest Coop. Inc., 532 S.W.3d 180,188 (Mo.App. 2017). Amazon states that "[a] party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement." Id. (internal citations and quotations omitted). Amazon argues that American Millennium's liability for breach of the covenant of good faith and fair dealing arises from the same conduct that forms the basis of the bad faith claim – it had an obligation to cooperate with Amazon to provide Amazon's expected benefit under the policy, which was coverage with respect to the accident. Amazon alleges however that instead of cooperating, American Millennium colluded with the others to conceal the wrongful death claim, the non-execution agreement, the arbitration award and the judgment. Amazon argues that American Millennium used its authority to settle claims under the policy to resolve the risk of excess liability to Merob and Lakew and to terminate its own responsibilities under the policy. These actions were taken at Amazon's expense and denied Amazon its expected benefits under the policy.

Under Missouri law, a duty of good faith and fair dealing is implied in every contract. Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co., 464 S.W.3d 177, 185 (Mo. banc 2015). "A breach of the covenant of good faith and fair dealing occurs where one party 'exercise[s] a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.' " Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1112 (8th Cir. 2006) (alterations in original) (quoting Mo. Consol. Health Care Plan v. Cmty. Health Plan, 81 S.W.3d 34, 46 (Mo. Ct. App. 2002)); accord Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc., 532 S.W.3d 180, 190 (Mo. Ct. App. 2017).

Case 4:20-cv-00763-FJG   Document 456   Filed 09/22/23   Page 13 of 28

<u>Gateway Clippers Holdings LLC v. W. Bend Mut. Ins. Co.</u>, 557 F. Supp. 3d 925, 930 (E.D. Mo. 2021).

American Millennium argues that Amazon's expected benefit under the policy was for defense and indemnity in the event of a third-party liability claim. Because no third-party claim was asserted against Amazon by way of a lawsuit, settlement demand or any other method, Amazon could not have expected any benefit from the policy. Amazon states that the same facts which support its claim for a breach of the implied duty of good faith also support its claim for bad faith. For the same reasons as discussed above, the Court finds that American Millennium did not breach the implied duty of good faith and fair dealing to Amazon and did not deny Amazon the expected benefits under the insurance policy. Accordingly, the Court hereby **GRANTS** American Millennium's Motion for Summary Judgment on Count IV (Bad Faith) of Plaintiffs' Second Amended Complaint and on Count I of American Millennium's Counterclaim (Declaratory Judgment – American Millennium v. Amazon).

### 3. Count VI – Equitable Subrogation

In this claim, Zurich states that as a direct and proximate result of American Millennium's bad faith toward its insured, Amazon, Zurich has sustained damages in that the Hensons are seeking to garnish from Zurich the limits of its insurance policy. Zurich states that the $10 million sum should be paid by American Millennium due to its bad faith and the damages sustained by Zurich and Amazon.

American Millennium states that Missouri recognizes that "an excess insurer may be equitably subrogated to its insured's claim against the primary insurer for refusing in bad faith to settle." <u>Scottsdale Ins. Co. v. Addison Ins. Co.</u>, 448 S.W.3d 818, 833 (Mo.

2014). American Millennium notes that an excess insurer's cause of action for equitable subrogation "subjects the excess insurer's claim to any defenses the primary insurer could assert against the insured." Id. at 833. "[A]llowing an excess insurer to bring an action under equitable subrogation does not create a new duty or impose new obligations on the primary insurer; it merely substitutes the excess insurer for the insured." Id. at 833. As the Court has determined that American Millennium is entitled to summary judgment on Amazon's bad faith claim against American Millennium, Zurich's Equitable Subrogation claim must also fail. Accordingly, the Court hereby **GRANTS** American Millennium's Motion for Summary Judgment on Count VI (Equitable Subrogation).

### B. American Millennium's Second Motion for Summary Judgment

In its Second Summary Judgment Motion American Millennium seeks summary judgment on Amazon's prayer for punitive damages and attorney fees in Count IV of the Second Amended Complaint. As the Court has now determined that American Millennium is entitled to summary judgment on Count IV (Bad Faith), the Court hereby **DENIES** American Millennium's Second Motion for Summary Judgment as **MOOT** (Doc. # 399).

### C. Merob's Motion for Summary Judgment on Count II (Breach of Contract)

Amazon asserted a Breach of Contract Claim against Merob in Count II alleging that the Relay Carrier Terms prohibited Merob from consenting to the entry of judgment or from settling any claims without Amazon's prior written consent. Amazon states that Merob materially breached the contract by concealing the accident, non-execution agreement, lawsuit, and arbitration from Amazon and participating in the same without

15

Amazon's consent. The language of the Relay Carrier Terms that Amazon alleges Merob breached is Clause 9:

> You will not consent to the entry of judgment or settle any Claim without the Amazon Parties' prior written consent. You will use counsel reasonably satisfactory to the Amazon Parties, and the Amazon Parties will cooperate in the defense at your expense.

Merob argues that it did not breach the Relay Carrier Terms because it did not consent to the entry of judgment nor settle any claim, it only consented to arbitration proceedings and payment of American Millennium's policy limits. Merob argues that the Non-Execution Agreement "preserves all causes of action and rights" with respect to the death of Leslie Henson Sr. and includes claims against Merob and Lakew. Merob argues that even if its actions constitute a breach of the Relay Carrier Terms, Amazon's actions relieved it of any duties under Clause 9. Merob states that under Washington law, if there is a material breach of the contractual terms, then the breaching party cannot demand performance from the nonbreaching party. Merob argues that Amazon failed to cooperate under the terms of the contract because it failed to respond to the May 12, 2020 letter that Mr. Holtzclaw mailed to Amazon or to notify Zurich of the letter or the claim. Merob also argues that Amazon breached the implied duty of good faith and fair dealing by concealing its policy with Zurich.

In opposition, Amazon states that Merob wrongfully equates its notice to Amazon of the December 6, 2019 *accident* with Merob's notice of the Hensons *claim* for the injuries and death of Leslie Henson Sr. Amazon states that it did not receive this notice until May 20, 2020. Amazon states that neither Merob nor its counsel forwarded the Hensons' claim letter to Amazon at any time. Amazon states that there can be no genuine dispute of material fact that Merob breached the Relay Carrier Terms which

16

required it to use counsel "reasonably satisfactory" to Amazon and to permit Amazon to cooperate in or take control of the defense. Amazon argues that because Merob did not provide Amazon with timely notice of the Hensons' December 18, 2019 claim, Amazon could not and did not approve Merob's American Millennium appointed counsel, nor have a timely opportunity to cooperate in or control the defense. Additionally, Amazon argues that Merob completely settled the Henson defendants claim as to Merob's personal assets and also settled Amazon's rights as an additional insured under the American Millennium policy, all without its consent. Amazon also argues that none of Merob's defenses are valid and most of them are dependent on 1) material facts relating to when Merob and Lakew learned about the Zurich policy and 2) the notice given to Zurich.

After reviewing the parties' briefs and arguments relating to Count II, the Court finds that there are disputed issues of material fact which prevent the entry of summary judgment on the Breach of Contract Claim. Accordingly, the Court hereby **DENIES** Merob's Motion for Summary Judgment on Count II.

### D. Merob and Amazon's Motions for Summary Judgment on Count III (Contractual Indemnification)

In Count III Amazon asserts a claim against Merob for Contractual Indemnification stating that the Relay Carrier Terms required Merob to indemnify and hold Amazon harmless from any third-party claim, liability, loss, damage, cost or expense incurred by Amazon arising from or relating to the death of any person due to an act or omission of Merob or its personnel. Amazon states that pursuant to the deductible provision in the Zurich policy, it has and will continue to incur losses, damages, costs and expenses arising from or relating to the death of Leslie Henson, Sr.

17

Amazon states that the Relay Carrier Terms require Merob to indemnify Amazon for "any death of or injury to any person . . .due to an act or omission by" Merob or its personnel. Amazon states that Merob admitted in the Wrongful Death Action that "[Lakew's] negligence in his use and operation of the tractor-trailer directly caused the subject crash, the injuries suffered by [the Decedent] and [the Decedent's] death." Amazon states that the Relay Carrier Terms extend to "any third-party claim, liability, loss, damage, cost or expense (including reasonable legal fees) incurred by any Amazon Party. Amazon states that there is no genuine dispute of material fact that it has incurred and will continue to incur legal fees, costs and expenses in this action in order to enforce the Relay Carrier Terms. Amazon also argues that there is no dispute that its legal fees, costs and expenses "arise from or relate to" the death of the decedent due to the negligence of Merob's employee, Mr. Lakew. Thus, Amazon argues it is entitled to summary judgment on Count III.

Merob has also moved for summary judgment on Count III, arguing that: 1) Amazon's deductible does not fall under the Indemnification Provision; 2) the Indemnity Provision is unenforceable because Amazon failed to cooperate with Merob and 3) the Indemnification Provision is unconscionable. Merob argues that the indemnification provision is inapplicable because no third-party claim has been made against Amazon. The Hensons' claim was asserted *only* against Merob and Lakew and the garnishment action was asserted against Zurich. Thus, Merob argues that the indemnification clause has not been triggered by any of the lawsuits. Additionally, Merob argues that the Indemnification clause does not apply because Amazon's deductible does not stem from Merob's performance of the contract and is not the type of damage contemplated

18

by indemnity provisions. Any claim paid by Zurich is the result of Zurich's own contractual obligations under its insurance contract and are not "damages." Similarly, Amazon paying its deductible, is the result of Amazon's contract with Zurich. Merob also argues that to the extent it has a duty to indemnify Amazon, it is discharged due to Amazon's failure to cooperate under the terms of the contract and the implied duty of good faith. Additionally, Merob argues that the contract is unenforceable because it is a contract of adhesion and is unconscionable.

In reply, Amazon states that Merob's argument that the indemnification provision is limited to only "third-party claims" is incorrect and makes no sense, as it would render superfluous the additional terms "liability, loss, damage, cost, or expense" which are used in the provision. Amazon states that under Washington law, contracts are to be construed in a manner that does not render words superfluous. Amazon also refutes Merob's argument that it somehow failed to cooperate. Finally, Amazon argues that its deductible stems from the exact circumstances that were contemplated by the indemnification provision which require indemnification for costs, expenses and legal fees incurred by Amazon "arising from or relating to" the death of the Decedent "due to an act or omission" by Merob. Amazon states that Merob has admitted that the death of Leslie Henson Sr. was caused by the negligence of Lakew. This negligence was the basis for the $11 million that the Hensons are pursing against Zurich. Absent Lakew's negligence, there would not be an $11 million claim.

Merob, in reply states that the indemnity provision is limited to third-party claims. Merob argues that the words "third-party" apply to all of the words which follow it – claim, loss, damage, cost, or expense. Merob states that it is a basic rule of contractual

construction that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." PeaceHealth St. Joseph Med. Ctr. v. Dep't. of Revenue, 9 Wash.App.2d 775, 781, 449 P.3d 676, 680 (2019), aff'd, 468 P.3d 1056 (2020). Merob argues that the rule applies "when the modifying phrase makes sense with all items in the series" and "when the modifying clause appears at the end of a single, integrated list. Id.

**1. Indemnification Clause**

Clause 9 of the Relay Carrier Terms states that Washington law governs the contract. Accordingly, the Court will apply Washington law to the Contractual Indemnity claim. Clause 9 states:

> 9. Indemnification. You will defend, indemnify, and hold harmless Amazon and its Affiliates, and their respective directors, officers, employees, and agents (the "Amazon Parties") from any third-party claim, liability, loss, damage, cost, or expense (including reasonable legal fees) ("Claims") incurred by any Amazon Party arising from or relating to: (i) any death of or injury to any person, loss or damage to any property or any other loss due to an act or omission by you, your Affiliates, or any of their respective Personnel, (B) your breach of this Agreement, (C) any infringement or misappropriation of any Proprietary Right, or (D) any negligence, strict liability, fraud, or willful misconduct of you, your Affiliates, or any of their respective Personnel. However, you will not be obligated to indemnify Amazon Parties to the proportional extent the liability for a Claim is caused by the negligence or intentional misconduct of that Amazon Party as determined by a final non-appealable order of a court having jurisdiction. You will not consent to the entry of judgment or settle any Claim without the Amazon Parties' prior written consent. You will use counsel reasonably satisfactory to the Amazon Parties, and the Amazon Parties will cooperate in the defense at your expense. The Amazon Parties may take control of the defense at their expense. Your obligations under this Section 9 are independent of your other obligations under this Agreement.

In Thomas Center Owners Assn. v. Robert E. Thomas Trust, 20 Wash. App.2d 690, 501 P.3d 608 (Wash. App. 2022), the Court stated:

Indemnity agreements are subject to the fundamental rules of contract interpretation." Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wash. App. 86, 100, 285 P.3d 70 (2012). "The interpretation of a contract can be a mixed question of law and fact." Rekhter v. Dep't of Soc. & Health Servs., 180 Wash.2d 102, 134, 323 P.3d 1036 (2014) (plurality opinion). "But where the contract presents no ambiguity and no extrinsic evidence is required to make sense of the contract terms, contract interpretation is a question of law." Rekhter, 180 Wn.2d at 134. "A court's purpose in interpreting a written contract is to ascertain the parties' intent." Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 129 Wash. App. 303, 310, 119 P.3d 854 (2005). "Washington follows the objective manifestation theory of contract interpretation, under which courts attempt to ascertain the intent of the parties 'by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties.' " Hulbert v. Port of Everett, 159 Wash. App. 389, 399, 245 P.3d 779 (2011) (quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wash.2d 493, 503, 115 P.3d 262 (2005)). "Courts 'impute an intention corresponding to the reasonable meaning of the words used,' and words are given their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates otherwise." Hulbert, 159 Wash. App. at 399, 245 P.3d 779 (quoting Hearst, 154 Wash.2d at 503, 115 P.3d 262).

Id. at 699-700.

**1. Does the Indemnity Provision Apply Only to Third-Party Claims?**

As discussed above, Merob argues that a prepositive modifier normally applies to an entire series of words and this rule should be applied "when the modifying phrase makes sense with all items in the series" and when the modifying clause comes before or after a single, integrated list. Id. In this case, the Court does not find that this rule of construction should be applied, because applying the words "third-party" to the words "liability" or "loss" would be redundant of the "third-party claim." Additionally, applying the words "third-party loss" to the words "cost" or "expense" does not make sense when considering all of the items in the series. The Court finds rather that the clause makes more sense when the words are read individually as they are separated by the commas in the sentence. This interpretation means that Amazon will be held harmless from: 1)

21

any third-party claim, 2) liability, 3) loss, 4) damage, 5) cost or 6) expense. The Court finds that this construction of the phrase is the most logical interpretation and thus the Court determines that the indemnity provision is not limited to only third-party claims. Accordingly, Merob's Motion for Summary Judgment on this point is hereby **DENIED**.

### 3. Does the Indemnification Provision Encompass Amazon's Deductible?

Merob argues that the Indemnity clause does not apply because Zurich's claim against Amazon for the deductible does not stem from Merob's performance of the contract between Amazon and Merob and is not the type of damage contemplated by indemnity provisions under Washington law. In support of this assertion, Merob cites to Maclean Townhomes, L.L.C. v. America 1st Roofing & Builders, Inc., 133 Wash.App. 828, 138 P.3d 155,159 (2006), stating that the court held that "[i]ndemnity agreements are essentially agreements for contractual contribution, whereby one tortfeasor, against whom damages *in favor of an injured party* have been assessed, may look to another for reimbursement." Id. at 831 (emphasis added). Merob argues that Amazon's deductible is not the type of damage contemplated by Washington law. However, the Court in Maclean also stated, "[w]e are similarly unpersuaded by [the subcontractor's] efforts to convince us that broad indemnity provisions such as this are not permitted by law." Id. at 833. The Court also noted that the language of the indemnity provision was similar to that of another case with functionally equivalent language. The Court in that case stating: "it would be most difficult to assemble words which describe a more comprehensive and all-inclusive intent by the indemnitor to indemnify the indemnitee for all losses suffered by the indemnitee." Id. at 833, n.7 (quoting Karnatz v. Murphy Pac. Corp., 8 Wash. App. 76, 503 P.2d 1145, 503 P.2d 1145 (1972)). The contractual

22

indemnity language in that case stated: "Subcontractor shall defend, indemnify, and hold CONTRACTOR harmless from any and all claims, demands, losses and liabilities to or by third parties arising from, resulting from, or connected with, services performed or to be performed under this Subcontract by SUBCONTRACTOR or SUBCONTRACTOR'S agents, employees, subtier Subcontractors, and suppliers to the fullest extent permitted by law and subject to the limitations provided below. . .." Similarly, in this case the Indemnity provision is very broad: "You will defend, indemnify, and hold harmless Amazon and its Affiliates, and their respective directors, officers, employees, and agents (the "Amazon Parties") from any third-party claim, liability, loss, damage, cost or expense (including reasonable legal fees) ("Claims") incurred by any Amazon Party arising from or relating to: (i) any death of or injury to any person, loss or damage to any property or any other loss due to an act or omission by you, your Affiliates, or any of their respective Personnel . . ." Thus, the Court find that this provision is broad enough to encompass Amazon's deductible. Accordingly, Merob's Motion for Summary Judgment on this point is hereby **DENIED**.

### 4. Is the Indemnity Provision Unconscionable?

Washington law recognizes two categories of unconscionability: substantive and procedural. Nelson v. McGoldrick, 127 Wash.2d 124,131, 896 P.2d 1258 (1995). In Zuver v. Airtouch Communications, Inc., 153 Wash.2d 293, 103 P.3d 753 (Wash banc. 2004), the Court stated:

> Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh. . . .Shocking to the conscience, monstrously harsh, and exceedingly calloused are terms sometimes used to define substantive unconscionability. . . .Procedural unconscionability is the lack of meaningful choice, considering all the circumstances surrounding the

23

transaction including [t]he manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print.

Id. at 303 (internal citations and quotations omitted). Merob argues that Amazon's Relay Carrier Program was not the result of any negotiation process and Merob had to engage in a click through process in order to sign the agreement.

### a. Procedural Unconscionability

In Zuver, the court stated that with procedural unconscionability, courts look to "[t]he manner in which the contract was entered," whether there was "a reasonable opportunity to understand the terms of the contract," and whether "the important terms [were] hidden in a maze of fine print." Id. at 304. In Zuver, the Court considered whether an arbitration agreement was procedurally unconscionable due to the employee's unequal bargaining power. The Court stated, "the key inquiry for finding procedural unconscionability is whether Zuver lacked meaningful choice." Id. at 305. In that case, the Court found that the employee was given an offer of employment provided she sign six documents, one of which was the arbitration agreement. The company did not pressure the employee to sign the agreement immediately and she had time in which she could have consulted counsel or even asked questions of the company. The Court also found that the agreement was clearly labeled, the header was underlined, bolded and in capital letters. The Court also noted that the terms were in a normal typeface and font and the agreement was only one page long. The Court rejected the employee's argument that the agreement was procedurally unconscionable.

In the instant case, Amazon argues that Merob did not present any evidence that it attempted to negotiate with Amazon or that there were questions which Amazon

24

refused to answer. Amazon notes that Merob's Operations Manager testified that she did not engage in negotiations with any of the brokers, that the agreements were presented and you had to either fill them out or click a button to agree with the terms. Amazon argues that Merob has not offered any evidence that it was pressured or coerced to sign the Relay Carrier Terms without an opportunity to understand them. Merob's owner, Mr. Kidane testified that he called Amazon initially to find out what documents he needed to sign so that he could apply to haul freight for Amazon. Mr. Kidane testified that the Relay Carrier Terms were on-line, but he did have an initial conversation with Amazon where they told him what he needed to do and what he needed to submit. Mr. Kidane did not indicate that there were questions about the contract that he was unable to obtain answers to. Additionally, Amazon argues that Merob presented no evidence that the Relay Carrier Terms were not understandable. In fact, in early 2020, Mr. Kidane formed another trucking company, Winget Trucking and entered into the very same Relay Carrier Terms with Amazon. The Court finds that the Relay Carrier Terms were not procedurally unconscionable. Merob was given an opportunity to ask questions before signing the agreement and could have consulted counsel if they needed additional clarification regarding the terms. Additionally, the contract was in a standard typeface and font and the indemnification language was not buried in the agreement. Thus, the Court finds that because Merob had a meaningful choice whether to sign the agreement, it was not procedurally unconscionable.

### b. Substantive Unconscionability

Merob argues that the Relay Carrier Terms is substantively unconscionable because the language that Amazon could modify the Agreement "at any time," puts the

onus on Merob to review the agreement regularly to stay informed of any modifications. However, Merob argues that it does not have the privilege to change the terms at any time. In Hill v. Builder Services Group, Inc., No. C20-1478-JCC, 2021 WL 4026315, at *3, n.2 (W.D.Wash. Sept. 3, 2021), the Court stated, "unilateral modification clauses do not render arbitration agreements substantively unconscionable because the implied covenant of good faith and fair dealing limits a party's unilateral discretion to change a contract term. See Wiseley v. Amazon.com, Inc., 709 F. App'x 862, 864 (9th Cir. 2017) (citing Rekhter v. Dep't of Soc. & Health Servs., 323 P.3d 1036 (Wash. 2014))."

Secondly, Merob argues that the Indemnification Clause is overly harsh due to the disparity in the amounts of insurance policies and the fact that it had no knowledge of Amazon's policy with Zurich. Merob states that the Relay Carrier Terms, only required it to carry insurance of up to $1 million dollars, but if it is forced to hold Amazon harmless for its $8 million insurance deductible, this would be "shocking to the conscience" and unconscionable. The Court disagrees. The language of the indemnification provision is quite broad. Merob is required to hold Amazon harmless from "*any* third-party claim, liability, loss, damage, cost or expense (including reasonable legal fees)." (emphasis added). While the Relay Carrier Terms only required Merob to carry a $1 million policy, it is not surprising that the damages might well exceed a million dollars if a claim were to be made under the policy. Requiring Merob to indemnify Amazon for its deductible when a fatal accident occurred which was caused solely by the negligence of Merob's employee is not shocking to the conscience. Accordingly, the Court does not find that the indemnity agreement is substantively unconscionable.

26

### 4. Did Amazon's Failure to Cooperate Relieve Merob of its Duty to Indemnify?

As has been previously discussed, the Court finds that there are disputed material facts regarding the notice which was given to Amazon and whether Amazon failed to cooperate with Merob. Accordingly, the Court hereby **DENIES** Merob's Motion for Summary Judgment on this point.

For the reasons discussed above, the Court hereby **DENIES** Merob's Motion for Summary Judgment on Counts II (Breach of Contract) and Count III (Contractual Indemnification)(Doc. # 402). The Court also **GRANTS in PART** and **DENIES in PART** Amazon's Motion for Summary Judgment on Count III (Contractual Indemnification) (Doc. # 388).

### E. Motion for Expert Depositions

The parties filed a joint Motion requesting permission to conduct expert depositions in this case and to extend the deadline for filing <u>Daubert</u> motions. In the motion, they state only that they have conferred and agree that expert depositions are necessary in order to fully prepare the case. However, the parties do not indicate which expert witnesses they need to depose or explain why the expert witnesses' reports are insufficient or what additional information they seek to obtain from the expert witnesses beyond the scope of their reports. Without this additional information, the Court will **PROVISIONALLY DENY** the Motion for Expert Depositions (Doc. # 433). The parties may refile this motion if they believe that the expert depositions are still necessary and would be useful in narrowing the issues.

27

# IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** American Millennium's First Motion for Summary Judgment (Doc. # 385); **DENIES as MOOT** American Millennium's Second Motion for Summary Judgment (Doc. # 399); **DENIES** Merob's Motion for Summary Judgment on Counts II and III (Doc. # 402); **GRANTS in PART and DENIES in PART** Amazon's Motion for Partial Summary Judgment on Count III (Doc. # 388) and **PROVISIONALLY DENIES** the parties' Motion to Allow for Expert Depositions (Doc. # 433).

Date: <u>September 22 , 2023</u>                    **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                              Fernando J. Gaitan, Jr.
                                                   United States District Judge